UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CANDIE YER HERR and ERIC ZOOVES HERR,

        Plaintiffs,

    v.                                  Case No. 25-cv-1519-pp

JUDGE RACHEL M. BLISE
and HELEN LUDWIG,

        Defendants.

---

**ORDER SCREENING COMPLAINT, DENYING PLAINTIFFS' MOTION FOR PRELIMINARY HEARING AND TO SEAL CASE (DKT. NO. 4) AND DISMISSING CASE**

---

        On October 2, 2025, the plaintiffs—representing themselves—filed a five-page document titled "Non Statutory Petition in Equity Petition for Specific Performance of Assignee for Failure to Perform and other Equitable Relief," asking this court to "enlarge the equity jurisdiction" of the judge in their bankruptcy case and to compel specific performance from their bankruptcy trustee. Dkt. No. 1. Eight days later, on October 10, 2025, the court received from the petitioners a letter addressed to the undersigned, requesting an "emergency preliminary hearing" and asking the court to seal "the records of these proceedings and all future records." Dkt. No. 4. On October 29, 2025, the petitioners then filed a document titled "Amended Non Statutory Petition in Equity for Specific Performance of Bankruptcy Judge, for Specific Equitable Relief and Specific Performance of DOJ/Trustee and Motion to make a Deposit of Money/Thing that is capable of Delivery in The Court Registry with an Interest Bearing Account." Dkt. No. 5. Because the complaint—what the

1

plaintiffs have called a "petition in equity"—does not state a claim for relief and amendment would be futile, the court will dismiss the complaint and this case.

**I.      Screening the Complaint**

    A.      Legal Standard

The plaintiffs have paid the statutory fee for filing this case. But "district courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999); see also Rezny v. Wis. Dep't of Fin. Insts., Case No. 22-C-1285, 2022 WL 17551151 at *1 (E.D. Wis. Dec. 9, 2022) (stating that courts are free to screen a complaint for a self-represented plaintiff who has paid the full filing fee under 28 U.S.C. §1915(e)(2)). The court will exercise that authority here.

At the screening stage, the court must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief

2

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

The court will construe the "amended" document filed on October 29, 2025 as the operative complaint in this case. See Fed. R. Civ. P. 15(a) (allowing parties to amend their complaint once as a matter of course no later than twenty-one days after service of a responsive pleading or motion to dismiss).

    B.    The Complaint

The plaintiffs are challenging several actions taken (or not taken) by the judge presiding over their pending bankruptcy case, Judge Rachel Blise, and the bankruptcy trustee, Helen Ludwig. Dkt. No. 5 at 1. The plaintiffs allege that they filed a voluntary Chapter 7 bankruptcy petition on May 20th, 2025 "to settle all debts owed to the United States and its creditors." Id. at 3. They assert that they have "come in honor seeking a mechanism to make payment of debts to the United States and its creditors for complete discharge to get a 'fresh start' on their lives and ministry works." Id. They allege that on June 13, 2025, they filed a motion with the bankruptcy court "to provide a mechanism for petitioners to make payments to the United States." Id. They say that on July 17, 2025,

> petitioners as cestui, delivered and assigned unto Trustee Helen Ludwig, documents pertaining to a trust, and all rights under the contract, and collateral pertaining thereto, accompanied with adequate consideration of full faith and credit incontestable guarantee, which was received, accepted and not returned to sender by the assignee, which constitutes a promise to perform.

3

Id. at 4. The plaintiffs allege that they "provided instruments/intangible property to be recognized, enforced and protected and performed alongside the appointment/assignment" and that they have "acted in good faith unto the promisor, by their oath." Id. They allege that they presented Ludwig "with lawful UCC assignment of a valid debt instrument from the Petitioner directing the payoff of debts owed within the jurisdiction of the United States," but that Trustee Ludwig "refused to perform the duties as officer of the court" and "ridiculed petitioners, stating the instruments/trusts had 'no value.'" Id. at 2.

The plaintiffs recount some of the proceedings in the bankruptcy court. Id. at 3–7. They allege that they filed an adversary proceeding in the bankruptcy court to compel Ludwig to use this "instrument" to "pay the debt owed to the United States and its creditors" and to enforce the automatic bankruptcy stay against ongoing foreclosure proceedings in state court. Id. at 4. The plaintiffs allege that they also filed two motions to "leave statutory jurisdiction and to invoke equitable and biblical jurisdiction" which they assert "both run concurrently and can be applied to debtors petitions liberally." Id. The plaintiffs state that Judge Blise denied these motions and closed the adversary proceeding because she allegedly "stated that she is 'bound by Bankruptcy Law' and cannot move into equity." Id. The plaintiffs allege that they filed a motion for reconsideration of this order and a request to stay the bankruptcy proceedings pending the outcome of their federal civil cases, including this one. Id. at 5. The plaintiffs allege that Judge Blise denied their motions again and modified the bankruptcy stay to allow foreclosure proceedings to continue in the state court. Id. at 6–7.

The plaintiffs ask this district court to "compel Judge Rachel Blise and Trustee Helen Ludwig to perform their lawful equitable duties as required

4

within the scope of their office to discharge all debts the petitioner owes to the United States and its creditors, protecting the petitioners from multiplicity of litigations again." Id. at 8. Under "Relief Requested," the plaintiffs ask this court (among other things) to "restore the status quo as it existed before the defendants acted"; stay all proceedings in their bankruptcy case; order Judge Blise to dismiss an adversary proceeding one of their creditors brought against them; order Ludwig "to perform her duties as required by the oath and constitutional requirements of her office and compel her "to accept the assignment given to her, successfully liquidate and make payment to all debts owed to the United States and its creditors." Id. at 10–12. The plaintiffs also ask the court to enjoin or sanction two of their creditors, Scott Halloin and Wilshire Quinn Income Fund REIT, who are not parties to this case. Id. at 10–12.

The plaintiffs attached several exhibits to their original "petition in equity." The first exhibit is the June 13, 2025 motion they filed with the bankruptcy court "to Make Payment to the United States." Dkt. No. 1-1 at 1–8. The motion states that the plaintiffs "rely on the 12 USC 95A(2) provision to ensure that the United States as the creditor who holds title and possibly a lien and debtors acting in good faith without the intent to injure others or defraud anyone, solely intend on making appropriate transfer of debt to the United States." Id. at 2. The next exhibit appears to be the July 17, 2025 "trust" documents they sent to Trustee Ludwig. Id. at 9–33. The plaintiffs' letter to Trustee Ludwig states that as the "beneficiary of that certain trust, created by the Attorney General, and Commissioner of Immigration, Doris Meissner at United States District Court for the United States Eastern District of Wisconsin," they are assigning the trust to Trustee Ludwig and "authoriz[ing]

5

her irrevocably as attorney in fact to accept and receipt for all income, profits, benefits, payments, contracts, collateral and any other properties intended to be turned over to the trustee for proper distribution payable out of said beneficiary, out of said trust/estate property." Id. at 12. The plaintiffs state that Trustee Ludwig is authorized to take several actions on behalf of the "trust," including "[c]omplete avoidance of all lower court orders that are injurious to the Assignors' exemptions and equitable interests," authority to seek an injunction to prevent foreclosure proceedings pending the plaintiffs' bankruptcy case, and authority to commence "a replevin action to recover possession of real or personal property, including the Assignors' building, that was wrongfully seized pursuant to purported default judgment creditors." Id. at 12–13. The purported "trust documents" are the plaintiffs' certificates of citizenship naturalization, scrivener's error correction sheets and several UCC financing statements. Id. at 15–33. The plaintiffs attached more bankruptcy court documents to their amended complaint. Dkt. No. 5-1.

    C.    <u>Analysis</u>

The plaintiffs' claims against Trustee Ludwig fail for multiple reasons. "First, under what is known as the *Barton* doctrine, a plaintiff generally may not sue a private trustee or the trustee's attorney without first obtaining leave of the bankruptcy court." <u>Hughes v. Miller</u>, 521 F. Supp. 3d 781, 789 (E.D. Wis. 2021) (citing <u>Barton v. Barbour</u>, 104 U.S. 126 (1881); <u>Matter of Linton</u>, 136 F.3d 544, 545 (7th Cir. 1998); 1 Collier on Bankruptcy §10.01). The plaintiffs have provided no evidence that they sought such leave from the bankruptcy court. And bankruptcy trustees are entitled to "quasi-judicial immunity from suit for actions taken during the bankruptcy case." <u>Id.</u>

6

(collecting cases). These two jurisdictional bars alone compel dismissal of the plaintiffs' claims against Ludwig.

Even setting those two prerequisites aside, the plaintiffs' claims against Ludwig fail on the merits. The plaintiffs are seeking to compel Ludwig to liquidate the "trust" documents they say they gave her to her to pay off their "debt" to the United States. But the plaintiffs didn't give Ludwig any trust documents. They gave her their certificates of naturalization and some UCC financing statements. They also included documents to correct a "scrivener's error" on their certificates of naturalization, replacing their names spelled in all capital letters with their names spelled with initial capital letters followed by lower-case letters.

Though they do not refer to it, the plaintiffs appear to be arguing the "redemption theory," which the Seventh Circuit has stated

> holds that the federal government went bankrupt when it abandoned the gold standard in 1933 and began converting the physical bodies of its citizens into assets against which it could sell bonds. A tenet of this view is that knowledgeable citizens can redeem these assets and, through manipulating them in various imagined accounts, use them to their advantage.

United States v. Anzaldi, 800 F.3d 872, 875 (7th Cir. 2015). Some proponents of this theory believe that these assets are held in "exemption accounts;" "[m]oreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory—and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as 'redemption'—never have to actually pay for anything." McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (citing Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 758–61 (W.D. Va. 2007)). Redemption theory advocates believe that by issuing a birth certificate (or in this case, a

7

certificate of naturalization), the U.S. government made "strawmen" out of its citizens. Id. (quoting Ohio v. Lutz, No. 80241, 2003 WL 152837, at *3 (Ohio Ct. App. Jan. 23, 2003)).

> A person's name spelled in "English," that is with initial capital letters and small letters, represents the "real person," that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the "strawman" is referenced, and the flesh and blood person is not involved.

Id. (quoting Lutz, 2003 WL 152837, at *3). "By filing a UCC–1 financing statement, the flesh and blood person can make a claim against the assets obtained by the government from the 'strawman.' . . . By filing this statement, the Redemptionists believe, the flesh and blood person can draw against the funds earned by the 'strawman.'" Id. (quoting Lutz, 2003 WL 152837, at *3). Courts—including the Seventh Circuit Court of Appeals—have characterized such arguments and theories as legally frivolous, without any conceivable validity. See United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) (collecting cases). The Seventh Circuit has instructed that "[t]hese theories should be rejected summarily, however they are presented." Id. at 767.

The plaintiffs appear to believe that they (or Ludwig, on their behalf) can redeem their certificates of naturalization with the United States government for money to pay off their debts. This theory has no basis in law. The plaintiffs' bankruptcy trustee has no obligation to attempt to "redeem" their certificates of naturalization for money from the government. The plaintiffs are not entitled to specific performance of this non-existent duty. The complaint (what the plaintiffs refer to as the "petition in equity") does not allege that Ludwig took any other actions that purportedly violated her fiduciary duties as bankruptcy trustee, so it does not state a claim for breach of any duty to the plaintiffs.

8

The plaintiffs may be alleging that they had a separate contract with Ludwig beyond her duties as bankruptcy trustee. The complaint does not support this theory. The plaintiffs contend that they sent the July 17, 2025 letter with the "trust documents" to Ludwig, and that the documents were "received, accepted and not returned to sender by the assignee, which constitutes a promise to perform." Dkt. No. 5 at 4. "Under Wisconsin law, an enforceable contract has three elements: offer, acceptance, and consideration." C.G. Schmidt, Inc. v. Permasteelisa North America, 825 F.3d 801, 805 (7th Cir. 2016) (citing Runzheimer Int'l, Ltd. v. Friedlen, 362 Wis. 2d 100, 112 (Wis. 2015)). Although the plaintiffs' letter might constitute an "offer" to Ludwig, "[a]cceptance of an offer requires 'a meeting of the minds, a factual condition that can be demonstrated by word or deed.'" Carroll v. Stryker Corp., 670 F. Supp. 2d 891, 898 (W.D. Wis. 2009) (quoting Zeige Distributing Co., Inc. v. All Kitchens, Inc., 63 F.3d 609, 612 (7th Cir. 1995)). Ludwig's silence does not establish that she "accepted" the plaintiffs' offer to redeem their certificates of naturalization for money. There is no evidence that the plaintiffs and Ludwig had a meeting of the minds as to the plaintiffs' request for Ludwig to "redeem" their certificates of naturalization or perform the other actions the plaintiffs proposed. Because the complaint does not establish the parties had a valid contract, the complaint fails to state a breach of contract claim against Ludwig.

In their original complaint, the plaintiffs asked this district court to "Loose Judge Rachel Blise" and "enlarge the equity jurisdiction" of the bankruptcy court. Dkt. No. 1 at 1–2. The plaintiffs seem to abandon this argument in their amended complaint, but still ask this court to compel Judge Blise to do certain things in "equity." Dkt. No. 5 at 10. "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited

9

by statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). Bankruptcy courts have the jurisdiction "to adjudicate proceedings 'arising in,' 'arising under,' or 'related to' a case under title 11 [of the United States Code]." Matter of FedPak Sys., Inc., 80 F.3d 207, 213 (7th Cir. 1996) (citing Zerand–Bernal Group, Inc. v. Cox, 23 F.3d 159, 161 (7th Cir. 1994)). "'A court cannot write its own jurisdictional ticket,' Zerand–Bernal, 23 F.3d at 164, but must act within the confines of constitutional as well as statutory limits on its jurisdiction." Id. at 215. Although this court has the power to refer bankruptcy proceedings to bankruptcy judges—and it has done so for the past forty years—it cannot "enlarge" the bankruptcy court's jurisdiction anymore than it can "enlarge" its own.

The plaintiffs assert that the bankruptcy court has equitable powers. They are correct. But that does not mean that a bankruptcy court can do anything a party asks it to do, or that this court can authorize a bankruptcy court to do anything a party asks it to do. "While it is true that a bankruptcy court has equitable powers . . . , a bankruptcy court 'cannot use its equitable power to circumvent the law.'" Matter of Greenig, 152 F.3d 631, 635 (7th Cir. 1998) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 389 (1993) and quoting Carlson v. United States, 126 F.3d 915, 920 (7th Cir. 1997)). It has long been the law that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." Hedges v. Dixon County, 150 U.S. 182, 192 (1893). Whether in equity or in law, this court cannot "enlarge" the bankruptcy court's jurisdiction, or give Judge Blise authority that the Constitution and federal statutes do not give her.

10

The complaint contains no other allegations against Judge Blise. Even if it did, Judge Blise has judicial immunity from suit for actions taken in her judicial capacity in the plaintiffs' bankruptcy case. See Glick v. Gutbrod, 782 F.2d 754, 756 (7th Cir. 1986) (collecting cases); Hughes, 521 F. Supp. 3d at 789–90. The court will dismiss any claims against Judge Blise as barred by judicial immunity.

For all these reasons, the court must dismiss the complaint for failing to state a claim. Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile. The plaintiffs' claims against Judge Blise are barred by judicial immunity. The plaintiffs' claims against Trustee Ludwig are jurisdictionally barred and rely on frivolous, rejected legal theories. The complaint is thorough in its allegations, and the court does not believe any amendment could state a claim for relief.

## II. Motion for Preliminary Hearing and to Seal

The court is dismissing the complaint and this case without leave to amend, so it will deny as moot the plaintiffs' motion for a preliminary hearing.

The plaintiffs also asked the court to seal this case. The plaintiffs argue that their "lives have been consumed by the dangerous and vengeful campaign of Scott Halloin" which they contend has resulted in the incarceration and bankruptcy of several members of their community. Dkt. No. 4 at 1–2. The plaintiffs believe that Halloin was able to influence the criminal prosecution of non-party Kay Yang and has threatened to "do to Candie Herr, what happened

to Kay Yang." Id. at 2. The plaintiffs assert that they "fear for [their] physical safety and the safety of [their] church members if these cases become publicly known through unsealed court documents." Id. They argue that "[t]his is a necessary measure to protect [them] from further harm and to allow [their] plea for justice to be heard in a safe and secure forum." Id. at 3.

General Local Rule 79(d) (E.D. Wis.) states that any document or material filed with the court is considered public "unless, at the time of filing, it is accompanied by a separate motion requesting that: access to the document be restricted to the Court and counsel for the parties; or that the document or material, or portions thereof, be sealed by the Court." The motion must describe what the moving party wishes to restrict or seal and provide "sufficient facts demonstrating good cause for withholding the document or material from the public record." Gen. L.R. 79(d)(2)–(3). "Absent a sufficient factual basis demonstrating good cause sufficient to seal the documents or materials, the motion *must* be denied." Gen. L.R. 79(d)(3) (emphasis added).

The Seventh Circuit places a high burden on parties seeking to seal parts of the judicial record. "Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper." GEA Grp. AG v. Flex-N-Gate Corp., 740 F.3d 411, 419 (7th Cir. 2014). The longstanding rationale for such transparency and presumption of public access is that "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (citations omitted). "That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if . . . there

is good cause for sealing a part or the whole of the record in that case." Id. (citations omitted). The Seventh Circuit has stated that it "does not look favorably on indiscriminate, reflexive motions to seal the . . . record, but narrow, specific requests will be granted when based on articulated, reasonable concerns for confidentiality." KM Enters., Inc. v. Global Traffic Techs., Inc., 725 F.3d 718, 734 (7th Cir. 2013). Sealing an entire case is only appropriate in "extreme cases." Jessup v. Luther, 277 F.3d 926, 928 (7th Cir. 2002) ("When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed.").

The plaintiffs' motion to seal does not comply with this court's Local Rules or the standards set by the Seventh Circuit. First, the plaintiffs did not file the motion to seal at the same time as they filed their case or the documents they are seeking to seal. Second, they do not specify what material should be sealed; it appears they are seeking to seal the entire case. Third, the plaintiffs did not file redacted versions of the documents they seek to seal. Fourth, the plaintiffs have not provided sufficient facts establishing good cause. The plaintiffs state that they fear retaliation from Scott Halloin, but it's unclear how a case disputing actions taken by the judge and trustee in the plaintiffs' bankruptcy case would cause Halloin to retaliate against the plaintiffs. Further, the actions described in the complaint already are part of the public record in the bankruptcy case. The plaintiffs have not established that this is an "extreme case" where the benefits of sealing outweigh the presumption of public access to court records. The court will deny the plaintiffs' motion to seal this case because they have not presented good cause.

### III. Conclusion

The court **CONSTRUES** the "Amended Non Statutory Petition in Equity for Specific Performance of Bankruptcy Judge, for Specific Equitable Relief and Specific Performance of DOJ/Trustee and Motion to make a Deposit of Money/Thing that is capable of Delivery in The Court Registry with an Interest Bearing Account" as an amended complaint. Dkt. No. 5.

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim. The clerk will enter judgment accordingly.

The court **DENIES AS MOOT** the plaintiffs' motion for a preliminary hearing and **DENIES** their motion to seal this case. Dkt. No. 4.

Dated in Milwaukee, Wisconsin this 30th day of October, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**